**KENTUCKY STATE BAR ASSOCIATION,**
Complainant,

v.

**R. L. TUSSEY, Respondent.**

Court of Appeals of Kentucky.

Feb. 4, 1972.

Charles A. Cassis, Frank E. Haddad, Jr., Frank A. Logan, Louisville, for complainant.

Andrew J. Ross, Richmond, John E. Tarrant, Tarrant, Combs, Blackwell & Bullitt, Eli H. Brown, III, Brown, Eldred & Bonnie, Samuel L. Greenebaum, Greenebaum, Grissom, Doll, Matthews & Boone, Squire R. Ogden, Ogden, Robertson & Marshall, James W. Stites, Stites & McElwain, Leo T. Wolford, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, for respondent.

PER CURIAM.

The primary question before us is whether the preparation of real estate mortgages for a bank by one of its lay officers constitutes the practice of law within the meaning of RCA 3.020, which at the time this proceeding arose read as follows:

" 'The practice of law' is any service rendered involving legal knowledge or legal advice, whether of representation, counsel, advocacy in or out of court, rendered in respect to the rights, duties, obligations, liabilities, or business relations of one requiring the services. But nothing herein shall prevent any person not holding himself out as a practicing attorney from drawing any instrument to which he is a party without consideration unto himself therefor."

"Practicing law - - - includes giving advice and preparing wills, contracts, deeds, mortgages, and other instruments of a legal nature." Howton v. Morrow, 269 Ky. 1, 106 S.W.2d 81, 82 (1937). Ordinarily, therefore, the drawing of a real estate mortgage by one person for another would amount to the practice of law. But respondent relies on the last sentence of RCA 3.020 as above quoted and upon KRS 30.170(3), which provides:

"No rule - - - shall prevent a person not holding himself out as a practicing attorney from writing a deed, mortgage or will, or prevent a person from drawing any instrument to which he is a party."

The word "person" may of course include a corporation under the statute laws of the state unless the context requires otherwise. KRS 446.010(21).

Respondent further calls our attention to the following language in Carter v. Trevathan, Ky., 309 S.W.2d 746, 748 (1958):

"To come within the exception of RCA 3.020, one, who is not a lawyer, must not only act without consideration for his services in drawing the paper but he must be a party to, or his name must appear in, the instrument as one to be benefited thereby. Merely having a pecuniary interest, direct or indirect, in the transaction covered by the instrument he draws will not suffice to relieve him of the charge of unauthorized practice of law unless he is party to, or

his name appears in, the paper as one of the beneficiaries thereof. *However, if one, who is not a lawyer, is a officer of a corporation or a member of a firm or partnership, not acting in a fiduciary capacity, he may under RCA 3.020 draw a legal instrument for or on behalf of the corporation, firm or partnership if it is a party to the instrument, provided he receives no remuneration for that particular service.*" (Emphasis Added.)

The bar association contends, on the other hand, that neither KRS 30.170(3) nor the saving clause of RCA 3.020 is applicable and that the italicized language quoted from Carter v. Trevathan is dictum and in any event was effectually overruled by Frazee v. Citizens Fidelity Bank and Trust Company, Ky., 393 S.W.2d 778, 784 (1965), which held among other things that a bank or trust company acting only in a fiduciary capacity may not draft deeds and mortgages.

Respondent seeks to distinguish *Frazee* upon the ground that it was cónfined to fiduciary matters and services performed in the administration of estates, trusts and guardianships. Certainly it did not directly involve the question before us in this case, and it is perhaps for that reason that the court's attention was not drawn to a consideration of whether a basic inconsistency existed between *Frazee* and the so-called dictum in Carter v. Trevathan.

We think there is such an inconsistency, and that the last sentence of the quoted excerpt from Carter v. Trevathan must give way to the fundamental principle of *Frazee*.

■ The reason a trustee cannot do the things prohibited to it under *Frazee* is that unless it is a beneficial party to the instrument drawn it is not the real party in interest and therefore is drawing the instrument for someone else who is. This distinction is not obscured by the close relationship between trustee and beneficiary. Neither may it be obscured by the relationship between master and servant, principal and agent, employer and employe, corporation and officer. If the nonprofessional trustee may not prepare an instrument for his or its beneficiary, the nonprofessional officer or employe may not prepare it for his employer.

■ We construe KRS 30.170(3) and the last sentence of RCA 3.020, quoted above, as meaning one and the same thing, which is to say that any person may draw an instrument to which he is a party. By necessary implication RCA 3.020 says he may not charge compensation for it unless he is a lawyer. That is not inconsistent with the statute. *Frazee* says in effect that a trustee, as such, is not a "party" within the meaning of these provisions. In the case before us the bank was a party to the mortgages in question and would have the right to prepare such instruments if it were physically possible for it to do so. But a corporation is an artificial person, not capable of performing any act except through the agency of others, and for that reason it cannot come within the meaning of a "person" as the word is used in KRS 30.170(3) and RCA 3.020.

This proceeding is not against the bank. It is against an individual, and it is only because the respondent, as an individual not authorized to practice law, cannot draw real estate mortgages for others without being engaged in the practice of law that in practical effect his corporate principal cannot have them so drawn for itself. Hence the statement in *Trevathan* to the contrary is unsound, and whether it be called dictum or something else it is overruled.

That no fee or compensation is charged to the borrower, the other party to the instrument, is of no consequence. Certainly the officer of a corporation for which he draws a real estate mortgage receives some form of compensation or benefit from the corporation, through a salary or otherwise. If he could perform the service as an incident of the duties for which he is paid a

salary there is no logical reason he could not do it for a fee, and indeed no reason why he could not be carried on the payrolls of several different corporations, performing similar drafting services for all of them on either a salary or fee basis. It is just a matter of degree, and whatever may be the degree it amounts to the practice of law without a license.

■ Among other answers that might be presented to the argument that this result denies to corporations the equal protection guaranteed by the 14th Amendment of the U. S. Constitution, we reiterate that this is not a proceeding against the bank. We say here only that a layman may not enter into the practice of law through becoming an officer or employe of a corporate client. That this has the effect of denying to a corporation what natural men can do occurs by virtue of the inherent nature of a corporation as an artificial entity. As a matter of fact, it seems to us that if a corporation could have legal documents drawn for it by a nonlawyer it would enjoy a privilege not accorded to natural persons. The Constitution does not and could not guarantee that all persons can do the same thing, whether it be men and women or people and corporations. That a corporation may not draw legal instruments through a nonprofessional officer or employe is no more phenomenal than its inability to be so represented in court. See Union Savings Ass'n v. Home Owners Aid, Inc., Ohio, 23 Ohio St.2d 60, 262 N. E.2d 558 (1970), and Flynn v. Songer, Ky., 399 S.W.2d 491, 494 (1966).

■ The further argument that this court does not have jurisdiction to proceed against a nonmember of the legal profession was ably presented but nevertheless rejected in Kentucky State Bar Association v. First Fed. Sav. & L. Ass'n, Ky., 342 S. W.2d 397 (1961), and we are not persuaded to retreat from that decision.

■ It is contended also that the manner in which this proceeding has been conducted, as provided by the Rules of the Court of Appeals (RCA), deprives the respondent of due process of law and other fundamental rights under the 5th, 6th and 14th Amendments of the U. S. Constitution because the bar association is an arm of the court and the court therefore is prosecutor, judge and jury. If that be the case we know of no way in which this or any court could effectively exercise its inherent right to control the practice of law.

Where else would matters of this sort be tried? Even if they had the power, we doubt that the federal courts would be willing to try the merits of bar association disciplinary proceedings. The best and only thing for us to do is to establish orderly procedures under which a respondent will have reasonable opportunity to be heard, with counsel, under the accepted rules of evidence and principles of substantive law, before a competent judge or judges who are not individually involved in or affected by the alleged contempt. That the judges, *ex officio,* are titular heads of the legal profession, which has an interest in the outcome, is an unavoidable necessity, and the only protection against prejudice in favor of their profession must be their integrity and the self-restraint which is taught and imposed upon them by the traditions of the judiciary. In this connection, it is not inappropriate to note that the distinguished circuit judge who was designated as special commissioner to hear this case found in favor of the respondent and so recommended to this court.

It is not claimed that the rules establishing the procedure in cases of this kind are unconstitutional or unfair in particular, but only that they are so in general, for the basic reasons just discussed. We hold that they are not.

The facts in the case are undisputed. All the issues are legal questions. Although the learned trial commissioner concluded otherwise, it is our opinion that the preparation of real estate mortgages for a bank by an officer of the bank, whether it

be with or without remuneration from the mortgagee to the bank or to the officer, constitutes the practice of law. However, in view of the quite natural misunderstanding attributable to the statement in Carter v. Trevathan that we have now overruled expressly, we decline to hold the respondent in contempt.

Whether the principle of this case applies to certain other contracts and commercial papers mentioned in the briefs and oral arguments is a question we cannot appropriately decide here. Suffice it to say, however, that we accept Holmes' thesis that the life of the law has not been logic, but experience, and it is not likely that we shall be disposed to ignore the practical facts of life.

The respondent is found not in contempt.

All concur.